# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISINA

**SHABOYD PIERRE CANNON**                                    **CIVIL ACTION:**

**VERSUS**                                                              **NO.:  3:7-cv-527**

**SOUTHERN UNIVERSITY BOARD OF SUPERVISORS**          **SECTION:**

### COMPLAINT

Plaintiff, Shaboyd Pierre Cannon, by and through his undersigned attorney, Willie M. Zanders, Sr., respectfully alleges as follows against defendant, Southern University Board of Supervisors of Southern University and Agricultural and Mechanical College ("Southern University Board of Supervisors"):

### THE NATURE OF THIS ACTION

1. On August 22, 2014, Mr. Shaboyd Pierre Cannon, a third-year student at Southern University Law Center, was summarily dismissed for failing to report two arrests on his admission application in 2011.

2. His dismissal came after he voluntarily amended his law school application to reflect two prior arrests, one of which was refused by the local prosecutor and the other dismissed by a judge.

3. Following an appeal to the Chancellor, Mr. Cannon was readmitted to law school August 26, 2014.

4. After completing the Fall 2014 Semester, Mr. Cannon was again summarily dismissed on January 13, 2015, but this time by the Chancellor of the Law Center who asserted he had merely taken Mr. Cannon's August 2014 dismissal "under advisement."

5. Mr. Cannon asserts that his 2011 failure to include prior arrests on his law school application was merely a pretext to immediately remove him from Southern University Law Center following a recent highly publicized claim that he sexually assaulted a fellow law student.

6. In fact, Mr. Cannon had been previously cleared of that charge by the Law Center's Judicial Review Investigative Committee comprised of students, faculty and administrators at the Law Center.

7. In a procedurally and substantively flawed hearing on October 25, 2015, the Southern University Board of Supervisors, following the pre-hearing statement of a Board Member to "accept the Administration's position."

8. Mr. Cannon's accuser filed a criminal charge against Mr. Cannon after her claim was rejected by the Law Center.

9. The charge was subsequently refused by the District Attorney on May 10, 2016, six months after his appeal hearing before Southern University Board of Supervisors.

10. He sought admission to other Law Schools to complete his final year of law, but was denied because of his dismissal from Southern University.

11. As recent as December 2106, Mr. Cannon was provisionally admitted to Texas Southern Law School if Southern University would give him a letter of "Good Standing" which they denied.

12. In this complaint, Mr. Cannon seeks judicial relief for violation of his due process rights, liberty interest, and equal protection rights under the 14th Amendment to the U. S. Constitution, including Preliminary Injunction ordering his immediate re-admission to Southern University Law Center and full rights and privileges as a student in good standing.

## THE PARTIES

13. Plaintiff, Shaboyd Pierre Cannon (hereinafter "Mr. Cannon"), is domiciled in Georgia and was at all times material hereto, a full-time student at Southern University Law Center in Baton Rouge, Louisiana. Upon information and belief, since his October 2015 dismissal from Southern Law Center, Mr. Cannon has resided in Georgia, but temporarily resides in Houston, Texas.

14. Defendant, Southern University Board of Supervisors of Southern University and Agricultural and Mechanical College, was established under Article VIII, Section 7, of the Louisiana Constitution with the following purpose and power:

> Section 7. (A) Creation; Powers. … [T]he Board of Supervisors of Southern University and Agricultural and Mechanical College are created as bodies corporate. Subject to powers vested by this Article in the Board of Regents, each shall supervise and manage the institutions, statewide agricultural programs, and other programs administered through its system.

15. Southern University Law Center where Mr. Cannon was enrolled opened for instruction in 1947. "Its concept was born out of a response of a lawsuit by an African American resident, Charles J. Hatfield, III, seeking to attend law school at a state institution. Southern University Law Center is under the management and control of the Southern University Board of Supervisors.

16. At all times material hereto, Southern University Board of Supervisors acted by and through its agents, servants, employees, and representatives, who were acting in the course and scope of

their respective agencies or employment and/or in the promotion of Southern University's business, mission and/or affairs.

## JURISDICTION AND VENUE

17. Plaintiff invokes this Court's original jurisdiction pursuant to 28 U.S.C. § 1331, because the matter in controversy involves a federal question, 14th Amendment rights.

18. Plaintiff also invokes this Court's jurisdiction over related state common law and statutory claims under the principles of ancillary and/or pendent jurisdiction pursuant to 28 U.S.C. § 1367.

19. Pursuant to 28 U.S.C. § 1391, venue for this action properly lies in this judicial district because a substantial part of the events and omissions giving rise to the claims set forth below occurred in this district.

## STATEMENT OF FACTS

20.  In March 2014, Shaboyd Pierre Cannon from Gray, Georgia was admitted to Southern University Law Center in 2011.

21. In March 2014, he was nearing completion of his second successful years at the Law Center, having earned "A's" in Legal Writing, Contracts, International Criminal Law, European Law, and Trial Advocacy.

22. On or about March 27, 2014, Mr. Cannon began initial communications with the Office of Bar Admission for the State of Georgia given his desire to take the Bar Exam in Georgia the following year.

23. Summer 2014, Mr. Cannon was informed by Georgia Office of Bar Admissions that he had failed to notify Southern University's Law Center of a September 9, 2008 arrest (Shoplifting), and a 2011 arrest for rape.

24. Subsequently, Mr. Cannon obtained official documents showing that both charges were refused/dismissed and reportedly his attorneys had taken steps to have the records expunged.

25. August 2014, upon returning to the Southern Law Center, Mr. Cannon amended his law school application with the permission of Southern University Law Center's Vice Chancellor, Mr. Roderick C. White.

26. Upon applied for admission to Southern University Law Center on or about February 2011, Mr. Cannon acknowledged the following mandatory reporting requirement:

> "…the information provided in my application to the Southern University Law Center is true and I understand that any such information found to be false may constitute grounds for revocation of an offer of admission or for dismissal, as information discovered to have been omitted. I understand that it is my responsibility to inform the SULC Admissions Office of changes in any information requested on this application."

27. Mr. Cannon performed well academically at the Law Center for years one and year two, 2012, 2013, and had never been charged with any disciplinary infraction at the Law Center or the University-at-large.

28. Summer of 2014, prior to his third and final year in Law School, Mr. Shaboyd Cannon completed a Character and Fitness Application to take the Georgia Office of Bar Admissions anticipating to graduate from Southern University Law Center in May 2015.

29.  Subsequently Mr. Cannon was informed by Georgia Office of Bar Admissions that he had failed to notify Southern University's Law Center of a September 9, 2008 arrest (Shoplifting), and a 2011 arrest for rape.

30.  More specifically, officials at the Georgia Bar wrote the following to Mr. Cannon, in pertinent part:

> "Mr. Cannon you reported your arrest but when asked by Southern University if you were ever arrested your response was no…please explain your response, and in detail explain your intentions if any to notify your law school. "

31.  Mr. Cannon attempted to contact Vice Chancellor White and began to attain police reports, and proof of dismissal of the criminal charges.

32. Records from the Milledgeville Municipal Court in Milledgeville, Georgia showed Shayboyd Cannon's September 9, 2008 arrest was officially dismissed January 7, 2009 with a "Close Date" of April 23, 2009.

33.  Records for the Superior Court of Dougherty County Georgia showed that the Rape charge against Shaboyd Pierre Cannon was officially dismissed April 14, 2010.

**Southern University Law Center summarily dismissed Student Shaboyd Cannon without a due process hearing.**

34.  On August 20, 2014, upon returning to Southern University for his third and final year, Mr. Cannon amended his law school application with the permission of Southern University Law Center's Vice Chancellor, Mr.  Roderick C. White.

35. The same day Vice Chancellor White informed Mr. Cannon that a female law student he had dated the previous semester alleged that he had sexually assaulted her on campus.

36.  On or about August 21, 2014, Mr. Cannon received a phone call from Southern University Campus Police Officer about the alleged incident, but no action was taken.


37. On August 22, 2014, Mr. John K. Pierre, Vice Chancellor of Southern University's Law Center presented sent a letter to Mr. Shaboyd Cannon informing him "Because of your failure to disclose character and fitness information, the Admissions Committee has voted to revoke your admission to the Southern University Law Center resulting in your being administratively dismissed from the Law Center."

38.  Vice Chancellor Pierre's August 22, 2014 letter also stated, "You may appeal your dismissal to Chancellor Freddie Pitcher, Jr."

39.  On August 26, 2014, Mr. Cannon received notice from the Registrar of the Law Center informing him of his dismissal from The Southern University Law Center.

**Mr. Cannon appealed to the Chancellor of the Law Center and allowed to remain at Southern University Law Center**


40.   That same day, August 26, 2014, he met with Chancellor Freddie Pitcher Pitcher Jr. who instructed him to file an appeal for re-admission by 5 p.m. that evening.


41.  In his written appeal, Mr. Cannon apologized to the Chancellor for failing to report his prior arrests and explained that both charges had been dismissed.


42. Mr. Cannon concluded his appeal to the Chancellor with the following state-ment:

> "My prayer is that Chancellor Pitcher reconsiders my admission granting me stay for this semester and year as I am in line to graduate this spring. I fully understand the graveness of my decision. It was not my lawyers fault, but the fault of a young, e[a]ger, ambitious, ignorant, and soon to be law student."

43. That same day, August 26, 2014 at 4:45 p.m.,  Mr. Cannon went the Office of Chancellor Freddie Pitcher Jr. to see if a decision had been made regarding his appeal, but no secretary was present.

44. Approximately fifteen minutes later, Vice Chancellors John Pierre and Roderick White later arrived and held a private conversation.

45. Shortly thereafter Chancellor Pitcher walked out of his office and  into the waiting area. He then told Vice Chancellor Pierre to sign the payroll for the Law Center and then instructed Mr. Cannon to "Go to class."

46. Mr. Cannon left the office headed to class, but rushed back to speaking with Vice Chancellor Roderick White about his financial aid for the semester.

47. He entered Mr. White's office and watched as Mr. White called the Registrar and informed her that he had been readmitted to the Law Center.

48. Vice Chancellor White assured Mr. Cannon that his financial aid was "clear" and to return to his office the following morning if "there was an issue."

49. Student Shaboyd Cannon went to his evening classes at the Law Center.

50 As to documentation of the Chancellor's decision to readmit him, Shaboyd Cannon subsequently retrieved a September 9, 2014 letter signed by Chancellor Freddie Pitcher, Jr. with the recipient's name and addressed removed, wherein the Chancellor revoked Vice Chancellor Pierre's dismissal decision and placed the student on probation.

51. Chancellor Pitcher's September 9, 2014 letter concluded, in pertinent part, as follows:

> I, have, however, reviewed your written statements of appeal, considered any personal interview with you, considered your strong academic record while in law school, along with the debt load you have amassed while pursuing your legal education, in deciding whether to allow you to remain in law school. I find that your due diligence on the question of expungement and duty to report were lacking, but not to the extent where it was a purposeful attempt to be deceitful. I am therefore overruling the order of revocation and dismissal, and will allow you to continue with your legal education. In doing so, you are hereby reprimanded for your failure to disclose and advised you will be on probation for the duration of your law school matriculation. You are further advised and admonished to report any and all incidents that occur where you are involved that may have a bearing on your character and fitness, including any and all traffic citations and violations."

52. There is no dispute that Mr. Shaboyd Cannon was allowed to remain enrolled as a full-time student at Southern University's Law Center for the entire Fall 2014 Semester as evidenced by the November 10, 2014 email to a Vice Chancellor at the Law Center as excerpted, in part, below:

**Sent:** Monday, November 10, 2014 3:15 PM
**To:** Russell Jones

**Vice Chancellor**:

*Good morning, I have been advised to bring this issue to your attention first. The last four months have been overbearing to say the least.*
*There were times I had to leave class early or enter class late for the purposes of both school officials/professors and or Southern University policing authorities to conduct -investigative interviews… This is a formal request to have my fall 2014 final exams rescheduled for some date during the Spring Semester of 2015.*

*I am also requesting your assistance with Spring registration.* The following schedule allows me to accept my intern offer and graduate at semesters end:

Constitutional Law I- 20292 412 Thursday 7:15-9:15
La Civ. Pro II- 20288 505 Thursday 5:20-7:10
Security Devises- 20244 Tuesday and Thursday 12:45-1:59
Juvenile Justice- 20260 Tuesday and Thursday 2:00-2:50
Law Office Practice- 20264 Tuesday 3:00-4:40

*I appreciate your time.*

*Respectfully,*

Mr. Shaboyd-Pierre' Cannon
Morehouse 06'

**At the end of the Fall 2014 Semester, the Law Center's Judicial Review Investigative Committee cleared Mr. Cannon of the Sexual Assault Charge.**

53. While continuing his law school studies from September 2014 to November 2014, Mr. Cannon participated fully in countless interrogations directed by Southern's Campus Police and Southern University Law Center's Judicial Review Investigative Committee.

54. Mr. Cannon complied with the "no contact" instructions regarding his accuser who remained enrolled at the Law Center. He remained in his classroom until hallways were cleared and, as ordered, went in the opposite direction when he saw his accuser.

55. On November 7, 2014, following an extensive investigation, a hearing was held before the Judicial Review Board and the members decided they needed more time to decide the matter.

56. Two days later, November 9, 2014, Mr. Cannon received an email from Vice Chancellor Roderick C. White notifying him of the Judicial Review Board's decision that he was "NOT RESPONSIBLE" for the alleged misconduct.

57. Mr. Cannon was then notified that his accuser desired to appeal the Judicial Review Board's decision.

58.  Mr. Cannon requested an extension of his final exam dates from Vice Chancellor Russell Jones, and the request was granted.

59.  The Appeal requested by Mr. Cannon's accuser was scheduled for December 15, 2014 at the Southern University Law Center, but she abandoned her appeal.

60.  On December 17, 2014, Mr. Cannon was informed via email "Ms. _____ has abandoned her appeal…she has been told this issue may no longer be revisited."

**The alleged victim filed a criminal charge against Mr. Cannon, but it was subsequently refused by the District Attorney for the Parish of East Baton Rouge.**

61.  The first Monday after the Christmas Holiday Break, January 5, 2015, Mr. Cannon was notified by a Southern University Detective that an Arrest Warrant had been issued on December 18, 2014, three days after his accuser had abandoned her appeal and one day after she was told by the Law Center's Judicial Review Committee "this issue may no longer be revisited."

62.  Mr. Cannon was told by a Southern University Detective "…I will give you until Friday to turn yourself in".

63.  On January 9, 2015, Mr. Cannon turned himself as ordered by Detective Williams and was arrested on the complaint filed by the female law student he has previously dated.

64.  He was released from East Baton Rouge Prison near midnight on January 9, 2015, followed by embarrassing and humiliating news stories at the University and the community-at-large.

## __ALLEGATIONS__

**Despite a favorable ruling from the Judicial Review Board, Mr. Cannon's arrest prompted Chancellor Pitcher to summarily dismiss him.**

65. On January 10, 2015, one day after Mr. Cannon's arrest, Chancellor Pitcher issued the following email throughout the Law Center under the Subject: *Sexual Assault Allegations at SULC.*

**From:** Freddie Pitcher Jr.
**Date:** 10 January 2015 12:29:25 GMT-6
**To:** Student-Email
**Subject:** Sexual Assault Allegation at SULC

January 10, 2015

Greetings:
You may be aware that there has been a report of an alleged sexual assault occurring in the Law Center's library.  Please be advised that this was an isolated incident and that there is no credible information that would lead the Administration to believe that there is an ongoing threat to the safety of our students.  It is always a good practice, however, to be aware of your surroundings and the individuals with whom you come in contact.  You may find safety advice and protocols for the law Center at the link below.  We want to assure you that it is our top priority that the Law Center is a secure and safe environment.  We will do everything within our means to continue to ensure the safety of our students.
http://www.sulc.edu/Departments/Enrollment/StudentAffairs/safety.html

Freddie Pitcher, Jr.
Chancellor & Professor of Law
Southern University Law Center

66.  On January 13, 2015, Vice Chancellor Roderick C. White called Mr. Cannon and notified him of a required meeting with Chancellor Freddie Pitcher Jr. before attending any classes.

67. The following day, January 14, 2015, Mr. Cannon received a "hand-delivered" letter from Chancellor Freddie Pitcher Jr. stating in part:

"By way of this letter, you are hereby notified that your appeal of your admission revocation is denied and you are dismissed from the Southern

12

University Law Center. All rights and privileges that were accorded to your as a student are officially withdrawn."

68. Chancellor Pitcher asserted the following in his January 13, 2015 letter to Mr. Cannon:

On August 22, 2014, you were notified by Vice Chancellor John Pierre, Chairman of the Southern University Law Center's Admissions Committee that your admission to the Law Center had been revoked because of your failure to disclose information about an arrest on your application for law school.

"…You filed an appeal and I took the matter under advisement, allowing you to remain in school while your appeal was considered. …however, a new allegation of impropriety came to light that bore upon your character and fitness, and I thought it best to allow this matter to be resolved or sorted out and not have it to influence the failure to disclose matter."

69. Mr. Cannon is in possession of a September 9, 2014 letter signed by Chancellor Freddie Pitcher, Jr. with the recipient's name and addressed removed, wherein the Chancellor revokes a student's admission and the student is placed on probation and allowed to remain in Law School.

70. The student's name had been removed from the letter, it supports Mr. Cannon's assertion that one of more students who gave false statements on their admission application was allowed to remain in at the Southern University Law Center.

**Mr. Cannon's Hearing before Southern University's Board of Supervisors was flawed and Baseless and resulted in an arbitrary and capricious decision**.

71. On or about September 18, 2015, Mr. Cannon's new attorney, Mr. Willie M. Zanders, asked an attorney for Southern University to place Mr. Cannon's appeal on the Board's Docket for September 25, 2015.

72.  Prior to be given a date certain for a Board Hearing, Attorney Zanders sought information from the local District Attorney's regarding the sexual misconduct charge against Mr. Cannon but was unable to have the matter resolved prior to a hearing before Southern's Board of Supervisors.

73. On October 23, 2015 Mr. Cannon's dismissal was placed on the Agenda of Southern University's Board of Supervisors with both Mr. Cannon and his attorney were fully prepared to stress the fact that Mr. Cannon needed only one more semester to graduate.

74.  Before the Board went into Executive Session to discuss Mr. Cannon's appeal, a Board Member stated in a load voice, "Let's accept the Administration's recommendation and end this thing now!"

75.  The Board then voted to go into Executive Session, but first all members ate a full-course breakfast and then invited my client and I into the room.

76.  An Attorney for the Board of Supervisors reminded the Board that they had been given the Administration's position on Mr. Cannon's expulsion and that I would be allowed to make a short presentation and leave the room.

77.  Mr. Cannon was not allowed to make a statement or answer questions.

78. The presentation made by Mr. Cannon's attorney included twenty (20) Exhibits and Summary Statement supporting the fact that Mr. Cannon needed only one semester to finish law school.

79.  Neither Mr. Cannon nor his attorney were given a copy of the University's position or documents from its attorneys or Administrators.

80. Southern University's Law Center Chancellor, whose decision was being challenged at the hearing, did not attend the hearing.

81.  Mr. Cannon and his attorney were asked to leave the conference room after about ten (10) minutes, but the three (3) administrators from Southern's Law Center and the attorney representing the University were allowed to meet with the Board "*ex parte*".

82. The total time of the "hearing" was about 20-25 minutes, including breakfast for Board Members.

83. Mr. Cannon and his attorney were not called back into the Executive Session to respond to the Administration's position, answer questions, or pose questions to any administrator.

84. Upon returning to the open Board Meeting, a motion was made to "accept the Administration's Position."

85. Mr. Cannon's attorney approached the microphone and openly asked Chairperson, "What is the position of the Administration?"

86. His attorney was told he did not "have the floor" and was ignored by Board Members as he continued to ask questions for another minute or two.

**District Attorney refused to accept sexual assault charges against Mr. Cannon.**

87. On May 10, 2016, Mr. Cannon received a letter from an Assistant District Attorney for East Baton Rouge Parish informing him that no charges would be filed against him in connection with the alleged incident at Southern University Law Center in 2015.

**Mr. Cannon and his criminal attorney asked Southern University Law Center to allow him to complete his senior year at Southern or another law school.**

88. Mr. Cannon subsequently informed Southern University officials that the sexual assault charges had been refused and asked for a letter of good standing to be allowed to attend Texas Southern University Law School in Houston, Texas.

89. On December 2, 2016, the Associate Dean of Texas Southern Law School wrote a "TO WHOM IT MAY CONCERN" letter confirming the fact that Mr. Cannon had been admitted to Texas Southern Law School for the Spring 2017 Semester if he received a "Letter of Good Standing" from Southern University Law Center.

90. Southern University Law Center refused to provide Mr. Cannon with a Letter of Good Standing.

**First Cause of Action**
**Breach of Contractual Due Process Safeguards**

91.   Shaboyd Pierre Cannon incorporates and realleges paragraphs 1 through 90 as if set forth fully herein.

92.   At all times material hereto, a contractual relationship existed between Shaboyd Pierre Cannon and the Southern University Law Center.

93.   Policies and procedures governing student conduct regarding academic and non-academic matters were promulgated by Southern University Law Center (SULC), including but not limited to the Southern University Student Conduct Manual.   These policies and procedures formed the basis a contractual relationship between the Law Center and its students, specifically Shaboyd Pierre Cannon.

94.   SULC's Student Conduct Manual contains a section entitled "AMENDING YOUR ORIGINAL LAW SCHOOL APPLICATION" which states, in pertinent part:

> On occasions, students may find it necessary to amend their original law school application. Amending an application is a serious matter. The SULC law school application states: "[b]ecause of the high ethical standards to which lawyers are held, failure to fully disclose information requested below may result in revocation of admission or disciplinary action by the Law Center, or denial of permission to practice law by the state in which you seek admission to the bar...."
>
> Students should be aware that a request to amend their law school application is subject to the SULC Non-Academic Honor Code. An amendment request may be either accepted with no action required on your part or the Law Center or could result in disciplinary action up to and including revocation of your admission. Please be aware that even if an amendment request is accepted without adverse action taken by the Law Center, bar admission committees have sometimes refused

to certify the character of a graduate when they (the bar) are not persuaded by the explanation provided by the graduate for not disclosing moving violations or other arrests and charges, on their law school application.

95. The Manual also contains a section entitled "SUPPLEMENTING CHARACTER AND FITNESS INFORMATION":

> At times, during law school matriculation students encounter situations or are involved in actions that require that they update their character and fitness information. Law students are under a continuing duty to supplement their character and fitness information. All information that is requested on the original application should be reported if an incident occurs which changes the status of the original response. Your request to supplement your character and fitness information is subject to the SULC Non-Academic Honor Code. You should inform the Law Center of any citations, summons, arrests and or criminal charges brought against you while attending the Law Center.

> Your request to supplement your character and fitness information may be either accepted with no action required on your part or the Law Center or could result in disciplinary action up to and including expulsion from the Law Center. Please be aware that even if your request to supplement is accepted without adverse action taken by the Law Center, bar admission committees have sometimes refused to certify the character of a graduate when they (the bar) are not persuaded by the explanation provided by the graduate that they meet the character requirements for admission.

> You may request a form to supplement your character and fitness information from the admissions department. Once you complete the form, with all supporting documents, it will be accepted. You will be contacted with the status of your request as soon as it is processed. Allow 2-3 weeks before contacting the Office of Student Affairs.

96. As per the previous excerpt from the Manual, "Students should be aware that a request to amend their law school application is subject to the SULC Non-Academic Honor Code."

97. A written or oral statement known to be false regarding a prior arrest on the Admissions Application is considered "Dishonesty" under the SULC Non-Academic Honor Code.

98.   SULC's Student Conduct Manual includes a Judiciary Committee which "shall be appointed by the Chancellor of the Law Center, or his designee, and have initial jurisdiction to hear all disciplinary actions, except violations of the Academic Honor code."

99.  Hence, SULC's Judiciary Committee was the appropriate and mandatory body to address Mr. Cannon's alleged failure to include prior arrests on his Admission's Application.

100.  Pursuant thereto, Southern University Law Center, its Chancellor, Committees, and administrators were required to act in accordance with all applicable policies and procedures in resolving complaints of alleged violations or misconduct, including representations made by students in the admissions process.

101.   Shaboyd Pierre Cannon paid annual tuition and fees to Southern University Law Center and was otherwise in full compliance with admissions and enrollment procedures.

102.   However, Mr. Cannon was not afforded a hearing before the Judiciary Committee after his initial dismissal by Vice Chancellor Pierre in August 2014 or subsequent dismissal by Chancellor Pitcher in January 2015.

103.   Based on the facts, SULC materially breached its contractual obligations to Shaboyd Pierre Cannon by, among other things:

 a. Failing to provide Mr. Cannon an opportunity to appear before the Judiciary Committee to explain or defend his failure to include prior arrest information on his Admissions Application prior to being summarily dismissed by Vice Chancellor in August 2014.

b.  Failing to provide sufficient time for Mr. Cannon to obtain documents or discuss the failure to disclose arrest information with his attorneys who might have been able to offer reasonable and/or legally acceptable reasons for the non-disclosure.

c. Failure on part of Chancellor Pitcher to render a timely response to Mr. Cannon's August 2015 Appeal by allegedly taking the matter under advisement for four and one-half months, January 26, 2014-January 13, 2015, before upholding the Vice Chancellor's August 2015 decision. **Note:** It is duly noted that Mr. Cannon contends he was readmitted by the Chancellor on August 26, 2014.

d. Failure on part of Chancellor Pitcher in January 2015 to refer Mr. Cannon's alleged dishonesty to SULC's Judiciary Committee for disposition as governed by SULC's Code of Student Conduct.

e. Failure on part of Vice Chancellor Pierre to impose a proportionate and reasonable sanctions on Mr. Cannon, short of dismissal/expulsion.

f.  Failure on part of Chancellor Pitcher to impose a proportionate and reasonable sanctions on Mr. Cannon, short of dismissal/expulsion.

given the fact the some SULC students were not dismissed for failing to include arrest information on their application.

g. Issuing of arbitrary and capricious decisions to dismiss Mr. Cannon in August 2014 and January 2015. dismissal.


### Second Cause of Action
### Violation of Due Process and Property Rights


104. Shaboyd Pierre Cannon incorporates and realleges paragraphs 1 through 103 as if set forth fully herein.

105. As a third-year law student wanting to practice law in his home state of Georgia, Mr. Shaboyd Pierre Cannon has been deprived of a property interest in a benefit, where he has "a legitimate claim of entitlement to it." See Board of Regents v. Roth, 408 U.S. 564, 573-74, 577 (1972)).

106.  The 14th Amendment of the U. S. Constitution provides, in relevant part, that: "nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

107. Upon information and belief, Southern Law Center, through the Southern University Board of Supervisors, receives public funding through various means including, without limitation, funding from the State of Louisiana, funding from student loans provided by the federal government and through other funds furnished by the federal government.

108. Federal law requires public schools to provide fairness and due process as well as freedom from arbitrary and capricious conduct on part of school officials.

109.  Established herein are rules, policies and procedures which Southern University has established to ensure fairness and due process for all students and freedom from arbitrary and capricious treatment by school officials.

110.  To ensure fairness and due process for students enrolled at the Law Center, its Judiciary Committee adopted the following safeguards:

**1. Procedures**.   Any student subject to disciplinary action by the Judiciary Committee shall:

a. Be guaranteed due process.

b. Receive a written charge statement at least five (5) days before the hearing. The charge statement shall inform the accused of the date, time and place of the hearing, as well as documents to be presented and witnesses to be heard in the case.

c. Have an opportunity to review prior to the hearing the information to be presented against him/her at the hearing.

d. Have the right to be accompanied by legal counsel or an advisor. However, neither the legal counsel nor the advisor shall be permitted to speak except at the request of the Judiciary Committee.

e. Have an opportunity to speak in his/her defense and the right to present his version of the facts through oral and written statements, including statements of witnesses.

f. Have an opportunity to hear all information presented against him and to question adverse witnesses personally but not through legal counsel or the advisor.

g. Be provided a written statement of the findings of fact which shall be determined and based solely on what is presented at the hearing.

h. Have the right to examine the results and findings of the hearing. I. Have the right to make a record of the hearing at his/her own expense.

**2. Petition to Appeal**. A student shall be granted an opportunity to petition for an appeal to the Vice Chancellor for Student Affairs within forty-eight hours after notification of the Judiciary Committee's decision on his/her case. The Vice Chancellor for Student Affairs shall forward the petition to the Appeals Board. The Appeals Board determines whether the student shall be granted an appeal hearing based on sufficient reason(s) indicated in the written petition. Sufficient reason(s) shall be new evidence, discrepancies in the judicial procedure and/or inappropriate sanction or unfairness.

### Count 1 – Non-Compliance with University Policies and Procedures

111. In August 2015 Southern University Law Center's Admission's Committee and its Vice Chancellor for Academic Affairs violated Shaboyd Cannon's 14th Amendment due process rights by dismissed him without a hearing by the Law Center's Judiciary Committee and provided in SULC's Code of Student Conduct.

112. In January 2015 Southern University Law Center's Chancellor violated Mr. Cannon's 14th Amendment due process rights by either dismissing him or upholding his August 2014 dismissal without a hearing by the Law Center's Judiciary Committee and provided in SULC's Code of Student Conduct.

113. The denial of due process based on SULC's non-enforcement and non-compliance with its policies and procedures have caused irreparable harm to Shaboyd Cannon's academic future, career prospects, earning potential, and reputation.

## Count 2- Arbitrary and Capricious Actions

114. The August 2014 decision by the SULC's Admissions Committee and Vice Chancellor Pierre to dismiss Mr. Cannon from the Law Center in his third and final year was arbitrary and capricious because Mr. Cannon voluntarily amended his law school application and the two arrests he reported had been either refused by a prosecutor or dismissed by a judge.

115. The January 2015 decision by SULC' Chancellor to dismiss Mr. Cannon from the Law Center or uphold the 2014 dismissal decision in his third and final year was arbitrary and capricious because Mr. Cannon voluntarily amended his law school application and the two arrests he reported had been either refused by a prosecutor or dismissed by a judge.

116. The October 2015 hearing before Southern University's Board of Supervisors was tainted because before the meeting one Board Member stated, "Let's get this thing over and accept the Administration's position", and he would later confer with other Members and he later vote to dismiss Mr. Cannon.

117. The October 2015 hearing before Southern University's Board of Supervisors was flawed because Board Members met with representatives from the Administration and Board Attorneys without Mr. Cannon or his attorney present and following the meeting refused to allow Mr. Cannon or his attorney an opportunity to ask questions or to respond to the Administration's position.

118. The October 2015 decision by Southern University's Board of Supervisors to uphold the Law Center's dismissal of  Mr. Cannon was arbitrary and capricious because a) no explanation

was offered for its decision other than "We accept the Administration's position"; b) evidence showed Mr. Cannon had not been afforded a due process hearing before his dismissal in August 2014 or January ; and c) Mr. Cannon had been cleared of a sexual misconduct charge by students and faculty members in the Law Center.

<div align="center">

**Third Cause of Action**
**Violation of Equal Protection Rights**

</div>

119. Shaboyd Pierre Cannon incorporates and realleges paragraphs 1 through 118 as if set forth fully herein.

120. The Equal Protection Clause requires states and Southern University's Board of Supervisors, a corporate entity created by the state, to treat their citizens equally which includes equal due process safeguards for male law students with or without a pending complaint.

121. In August 2014, Southern University Law Center's Vice Chancellor denied Shaboyd Cannon equal protection under the 14th Amendment to the U.S. Constitution by dismissing him for failing to list prior arrests on his Admissions Application when other students have not been dismissed for the same offense the same semester.

122. In January 2015, Southern University Law Center's Chancellor denied Shaboyd Cannon equal protection under the 14th Amendment to the U.S. Constitution by dismissing him for failing to list prior arrests on his Admissions Application or upholding his August 2014 dismissal, yet other students have not been dismissed for the same offense the previous semester.

123. Chancellor Pitcher's September 9, 2014 letter discussed in Paragraph 35 of this this complaint, concluded, in pertinent part, as follows:

> I, have, however, reviewed your written statements of appeal, considered any personal interview with you, considered your strong academic record while in law

school, along with the debt load you have amassed while pursuing your legal education, in deciding whether to allow you to remain in law school.

124. In October 2015 Southern University's Board of Supervisors denied Shayboyd Cannon equal protection under the 14th Amendment by denying him and his attorney a fair and reasonable opportunity to be heard compared to other hearings which were several hours long or all day. Further, the hearing was tainted because prior to the hearing, a Board Member stated, "Let's get this thing over and accept the Administration's position", and he would later confer with other Members and he later vote to dismiss Mr. Cannon.

125. Southern University Law Center's denial of equal enforcement of policies, procedures and due process rights has caused irreparable harm to Shaboyd Cannon's academic future, career prospects, earning potential, and reputation.

### Fourth Cause of Action
### Violation of Liberty Interest

126. Shaboyd Pierre Cannon incorporates and realleges paragraphs 1 through 125 as if set forth fully herein.

127. Mr. Cannon was deprived of a Fourteenth Amendment liberty interest because the Southern University Defendants' conduct "seriously damaged his standing and association at the Law Center, the City of Baton Rouge and the broader community in the age of the internet and social media.

128. His academic future, career prospects, earning potential, and reputation have been severely and irreparably damaged.

129. The significant time, effort, and expense that Mr. Cannon devoted to obtaining a law degree at Southern University and any hope of becoming a practicing attorney are lost, absent judicial intervention.

130. Absent immediate judicial intervention by this Court, the Defendant's actions will have a profound negative impact on Mr. Cannon for the rest of his life.

131. Mr. Cannon's dismissal from the Law Center was not put into the public domain with a statement that he had failed to report a prior arrest on his law school application. His dismissal was "timed" to give the public the distinct impression that he was being dismissed in connection with news reports of a rape on campus.

132. Mr. Cannon's dismissal by Southern University Law Center imposed upon him a stigma that may prevent him from ever being allowed to sit for a Bar Exam in any state and place him as a distinct disadvantage when seeking other employment opportunities.

133. The infringement of Mr. Cannon's constitutionally protected liberty interest has caused irreparable harm to this third-year law student's career prospects, earning potential, and reputation and without judicial relief, may never graduate from law school or any professional program of study.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Shaboyd Pierre Cannon, respectfully demands that judgment in the form of a preliminary injunction be entered in his favor and against Defendants, Southern University Board of Supervisors for the following relief:

(a)  An Order requiring Southern University Law Center to immediately allow Shaboyd Pierre Cannon to reenroll at the Law Center as a student in good standing, with all rights and privileges afforded any student is afforded;

(b)  An Order requiring Southern University Law Center to correct Shaboyd Pierre Cannon's academic and disciplinary record to remove his dismissal for failing to report prior arrests before entering Southern Law Center;

(c)  An Order requiring Southern University Law Center to accept and approved the Shaboyd Pierre's supplemented Character and Fitness  statement he submitted August 2014;

(d)  An Order requiring Southern University Law Center provide Shaboyd Pierre Cannon with a notarized letter verifying that all court-ordered corrections have been made to his permanent file;

(e)  An Order requiring Southern University's Board of Supervisors to appoint a campus official  who will report to the Board at a public meeting any/all student complaints of non-compliance with Board Policy of Policies of any School, Department or Program at Southern University; and

(f) The right to amend this Complaint to seek monetary damages and/or such other relief that the Court deems just and proper under the circumstances.


Dated this 8th day of August, 2017.


Respectfully submitted,

s/*Willie M. Zanders*

Willie M. Zanders, Sr., LSBA# 13778
Attorney for Shaboyd Pierre Cannon
25912 Stonehenge Drive
Denham Springs, Louisiana 70726
Telephone:  (504)258-7312
Email: wzanderssr@yahoo.com

# **CERTIFICATE OF SERVICE**

I, WILLIE M. ZANDERS, SR, hereby verify that a copy of this COMPLAINT has been sent

electronically to the Clerk of Court for the USDC-LAMD and the following parties representing

the Defendants, Southern University Board of Supervisors and the Southern University Law

Center, on today, August 8, 2017:

<div style="margin-left:3em">

Dr. Ray L. Belton
System President and Board Secretary
J.S. Clark Administrative Building, 3rd Floor
Baton Rouge, Louisiana 70813
Telephone: 225.771-5020
Email Address:  Ray_Belton@SUS.Edu

and

Southern University Board of Supervisors
(Through) DECUIR, CLARK & ADAMS, LLP
732 North Boulevard
Baton Rouge, Louisiana  70802
Email Address: Winston@Decuirlaw.com
Email Address: Winstonjr@Decuirlaw.com

</div>

In due course, each Defendant will be asked to complete a WAIVER OF THE SERVICE OF

SUMMONS to avoid the unnecessary expenses of servicing a summons.

**s/*Willie M. Zanders***

_____

WILLIE M. ZANDERS, SR.   LSBA NO. 13778